**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4020
_____

DA CHEN CHEN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A89-255-881)
Immigration Judge: Honorable Susan G. Roy

_____

Submitted Under Third Circuit LAR 34.1(a)
August 11, 2010

Before: BARRY, GREENAWAY and STAPLETON, Circuit Judges

(Opinion filed: September 2, 2010)
_____

OPINION
_____

PER CURIAM

        Da Chen Chen seeks review of a final order of removal.  For the reasons that

follow, we will deny the petition for review.

I.

Petitioner Da Chen Chen, a native and citizen of the People's Republic of China, entered the United States in June 2007, and conceded eligibility for removal. He sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), predicated on his past persecution and fear of persecution based on his resistance to China's restrictive family planning policies. Chen testified that he and his wife had a daughter born in 2001. Family planning officials then forced his wife to submit to the insertion of an IUD, which she had removed by a private physician in January 2006. She became pregnant in April 2006 and went into hiding in her sister's home to avoid family planning officials. Chen testified that before the birth of their daughter, he and his wife entered into a birth contract that would allow them to apply for permission to have a second child. However, they did not apply for permission because the contract required the applicant to be a farmer, and Chen was not one.[1]

Family planning officials visited Chen's home twice after his wife failed to keep her gynecological appointments. Chen testified that the officials suspected that his wife was pregnant and threatened to force her to undergo an abortion. They also threatened

---

[1] Chen testified that the contract required both he and his wife be in "farm production" to qualify. He testified that he resided in an urban household and had an accounting job. The IJ noted that Chen's household registry showed that they resided in an agricultural household. Chen stated that the information in the registry was a mistake and should have listed their residence as suburban. Chen stated that he knew of the error, but forgot to seek to have the registry corrected. (A.R. 51-52.)

2

Chen with the loss of his job. The officials returned to Chen's residence again in September 2006. He testified that they began breaking his possessions and removing items from his home. When he protested, the officials beat him and took him into custody. He was detained for five days. When his wife learned of his detention, she surrendered and submitted to an abortion. Chen testified that she was rendered sterile by this procedure. Soon after his release, Chen's employment was terminated.[2]

The Immigration Judge ("IJ") denied relief, finding that Chen was not credible, and that in any event, he had not demonstrated past persecution or a well-founded fear of future persecution or presented any evidence that he would be tortured if returned to China. The IJ based the adverse credibility finding on 1) inconsistencies in Chen's testimony regarding the birth contract, the reason for his wife's abortion, and the circumstances of his termination; 2) the lack of documents that the IJ thought were important to his claims; and 3) the failure of his wife's affidavit to corroborate his testimony or explain the absence of certain documents. In addition, the IJ concluded that Chen's beating and detention at the hands of family planning officials and his job termination did not constitute past persecution. The IJ also found that Chen had not demonstrated a well-founded fear of future persecution, nor had he sustained his burden

_____

[2] Chen gave changing testimony regarding whether he notified his supervisor about not coming to work during his detention, whether he was allowed to miss work without obtaining permission, and whether he was fired because he missed work or because he violated the family planning policy. (A.R. 54-55.)

of proof for withholding of removal or CAT relief.

The Board of Immigration Appeals ("BIA") agreed with the IJ's conclusions and affirmed, finding that Chen had not met his burden of proof under any of the applicable standards. Chen filed a timely petition for review.

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "Because the [BIA] implicitly adopted the findings of the Immigration Judge while discussing the IJ's conclusions, we review the decisions of both the [BIA] and the IJ." Issiaka v. Att'y Gen., 569 F.3d 135, 137 (3d Cir. 2009). We review factual findings, including adverse credibility determinations, for substantial evidence, see Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). Because Chen filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which the adverse credibility finding is based need not go to the heart of his claims. See 8 U.S.C. § 1158(b)(1)(B)(iii); Lin v. Att'y Gen., 543 F.3d 114, 119 n.5 (3d Cir. 2008). Rather, the REAL ID Act permits credibility determinations to be based on observations of his demeanor, the plausibility of his story, and the consistency of his statements. 8 U.S.C. § 1158(b)(1)(B)(iii).

III.

Chen claims that the adverse credibility finding is not supported by substantial evidence. He argues that the IJ's determination is problematic because the IJ did not consider his explanations and corrections for the inconsistencies and overemphasized their importance. He also claims that the IJ ignored both the documentation he submitted and his explanation for why he did not produce documentary evidence of his wife's abortion (namely, that officials refused to provide her with any). The BIA agreed with the IJ that while some of the inconsistencies, standing alone, did not support an adverse credibility finding, Chen's testimony considered as a whole showed a lack of credibility. See 8 U.S.C. § 1158(b)(1).

Moreover, the IJ and BIA did not rely on Chen's inconsistent statements alone. Chen failed to provide any documentary evidence of his beating, detention, or of his wife's abortion. The BIA concluded that the IJ was reasonable to expect such evidence and to consider that Chen's wife's affidavit did not support Chen's explanation regarding the lack of documentation of her abortion. We find that the IJ and BIA reasonably relied on inconsistencies between his testimony and documentary evidence, as well as inconsistencies in his testimony, to support an adverse credibility finding.

More importantly, the IJ and BIA found that, even if Chen's testimony was to be believed, he had failed to meet his burden of proof for asylum. To establish eligibility for asylum, Chen must demonstrate either past persecution or a well-founded fear of future

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See Vente v. Gonzales, 415 F.3d 296, 300 (3d Cir. 2005). "[P]ersecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003). It does not include "isolated incidents that do not result in serious injury." Voci v. Gonzales, 409 F.3d 607, 614-15 (3d Cir. 2005). Although being forced to undergo an abortion constitutes persecution, Chen cannot claim persecution based solely on his wife's alleged forced abortion. See 8 U.S.C. § 1101(a)(42); Lin-Zheng v. Att'y Gen., 557 F.3d 147, 156 (3d Cir. 2009) (en banc).

Chen argues that he suffered persecution when officials beat and detained him, and when he was fired from his job as a result of his resistance to China's policies. The BIA noted that Chen did not seek any medical treatment and that Chen and his wife have not had any further encounters with or harm from officials. Further, Chen did not provide any evidence to support his claim that his termination was related to his resistance to China's policies, or any testimony or evidence relating to the nature and extent of the economic disadvantage he allegedly suffered. As such, he did not show that he suffered persecution from economic restrictions. Accordingly, Chen has not met his burden of proof for asylum.

As Chen has failed to meet the burden for asylum, he fails to meet the higher

6

burden for withholding of removal under 8 U.S.C. § 1231(b)(3).  See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).  Likewise, the record does not support his claim for CAT protection.  See id. at 182-83.  Accordingly, the BIA properly denied CAT relief.

IV.

For the foregoing reasons, we will deny the petition for review.